## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CYNTHIA SHEPPARD,** and **MICHELE SAUNDERS,** individually, and on behalf of others similarly situated, | Case No.: 24-cv-01172 |
| Plaintiffs, | Hon.: Michael E. Farbiarz |
| vs. | Hon.: Cathy L. Waldor |
| **MINDLANCE, INC.**, a New Jersey Corporation, | |
| Defendant. | |

### FIRST AMENDED COLLECTIVE AND CLASS ACTION
### COMPLAINT AND RELIANCE ON JURY DEMAND

Plaintiff, CYNTHIA SHEPPARD and MICHELE SAUNDERS ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Class/Collective Action Complaint against Defendant MINDLANCE, INC. ("Defendant"), and states as follows:

### INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10, *et seq.*, and the Massachusetts Wage Act ("MWA"), M.G.L. c. 149 §148.

2.     According to Defendant's website, Defendant was identified as one of the largest staffing firms in the United States in 2023.[1]

3.     Defendant refers to itself as "a certified diversity business (MBE) and has been

---

[1] *See*, https://mindlance.com/ (last visited 2.14.23).

1

ranked on of the fastest growing U.S. staffing firms by SIA for nine consecutive years." Further, Defendant reports annual revenue of over $400 million. Defendant began providing "contingent staffing, [but has] developed to a wide-ranging portfolio of comprehensive workforce solutions."[2]

4.      Among Defendant's workforce solutions is "IT Solutions." One such IT Solution are Defendant's "Digital Transformation" services, which "help our clients in building always-on and contextually aware products and services that dramatically improve operational efficiencies and stakeholder satisfaction." Defendant will "not only setup the team, but also manage the delivery responsibilities." "Just tell [Defendant] what needs to be achieved, and [they] deliver on a pre-agreed price and schedule."[3]

5.      For example, Defendant contracts with various corporations ("clients") to supply remote IT Support Technicians ("IT TECHs") to assist the clients' employees with computer issues they encounter while performing their jobs.

6.      Within the past two years, Defendant employed Plaintiff Cynthia Sheppard as an IT TECH. While working from her home office in a remote call center type setting, she assisted the employees of Blue Cross Blue Shield of Florida ("Florida Blue") with any computer technical issues they encountered while performing their jobs.

7.      Additionally, Defendant Mindlance offers corporations other types of professional staffing, including providing call center services in the form of traditional remote Customer Service Representatives ("CSRs").[4]

8.      For example, Defendant employed Plaintiff Michele Saunders as a CSR on the Mercer, Marsh McCellan project providing callers with general customer service.

---

[2] See, https://mindlance.com/who-we-are/ (last visited 6/24/24).
[3] See, https://mindlance.com/digital-transformation/ (last visited 6/24/24).
[4] See, https://mindlance.com/professional-staffing/ (last visited 6/24/24).

9.      Upon information and belief, regardless of their job title, all of Defendant Mindlance's remote "Hourly Employees" utilize a self-recording computerized timekeeping system called "Beeline."[5]

10.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those jobs held by Defendant's IT TECHs or CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

11.      One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

12.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

13.      Given the DOL's express guidance on this issue, Defendant's violations of the FLSA were clearly willful or negligent. Either Defendant did not bother to determine whether time spent loading and logging into computer systems was compensable, or Defendant knew the time was compensable but nonetheless failed to pay Hourly Employees for this time.

14.      Moreover, recently, several circuits have confirmed the DOL's guidance on this

---

[5] See, https://suppliers.beeline.com/mindlance-inc (last visited 6/24/24).

issue that employers must pay their hourly employees for the pre-shift time they spend booting up their computers and launching software where, like here, it is "integral and indispensable" to their duties and is thus compensable under the FLSA. *Peterson v. NelNet Diversified Sols., LLC*, 15 F.4th 1033, 1041 (10th Cir. 2021) ("The preshift activities of booting up a computer and launching software are integral and indispensable to the CCRs' principal duties of servicing student loans by communicating with borrowers over the phone and by email."); *Cadena v. Customer Connexx LLC*, 51 F.4th 831, 840 (9th Cir. 2022) ("Because Appellants cannot perform their principal duties—receiving customer calls and scheduling—without a functional computer, booting up their computers at the beginning of their shifts is integral and indispensable and therefore compensable under the FLSA.")

15. Defendant requires its Hourly Employees to routinely work a full-time schedule, plus overtime, however, Defendant does not compensate Hourly Employees for all work performed.

16. Defendant requires its Hourly Employees to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

17. This policy results in Hourly Employees not being paid for all time worked, including overtime.

18. In the course of performing their job responsibilities, Defendant's Hourly Employees use various computer networks, software programs, applications and phone systems.

19. The time Hourly Employees spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the Hourly Employees work, and they cannot perform their jobs effectively without them.

20.     Defendant's Hourly Employees all perform similar computer-based tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

21.     Upon information and belief, Defendant's Hourly Employees all follow the same timekeeping process, use the Beeline timekeeping system, and are subject to the same relevant timekeeping and attendance policies.

22.     Plaintiff seeks to represent in this action all current and former Hourly Employees who used the Beeline timekeeping system and are similarly situated to each other in terms of their remote positions, job duties, pay structure and Defendant's violations of federal and state law.

23.     Defendant knew or should have known how long it takes Hourly Employees to complete their off-the-clock work, and Defendant could have properly compensated Plaintiff and the putative Collective and Class for this work, but did not.

24.     Defendant knew or should have known that Hourly Employees, including Plaintiff, worked overtime hours for which they were not compensated.

25.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

26.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

27.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to

29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

28.    Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

29.    This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

30.    Upon information and belief, Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

31.    Defendant's Hourly Employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

32.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

33.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

34.    This Court has personal jurisdiction over Defendant because it conducts business within the state of New Jersey, is registered with the New Jersey Secretary of State and employs individuals within the state of New Jersey.

35.    This Court also has personal jurisdiction over Defendant because it has

purposefully availed itself of the privilege of conducting activities in the state of New Jersey, has established minimum contacts sufficient to confer jurisdiction over it and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

36.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant is subject to the Court's personal jurisdiction.

## PARTIES

37.     Plaintiff CYNTHIA SHEPPARD ("Plaintiff Sheppard") is a South Carolina resident who worked for Defendant as a remote IT TECH in South Carolina within the last three years. She also worked as an IT TECH within the last two years. Specifically, from approximately December 2022 to December 2023 she held the position of IT TECH.

38.     Defendant paid Plaintiff Sheppard for her services in the form of an hourly wage, for all credited hours worked, most recently at $20.50 per hour.

39.     Plaintiff Sheppard has signed a consent to join this collective action lawsuit. ECF No. 1-1.

40.     Plaintiff Michele Saunders ("Plaintiff Saunders") is a Massachusetts resident who worked for Defendant as a remote CSR in Massachusetts within the last three years. Specifically, she worked on the Mercer, Marsh, Mclennan ("Mercer") from approximately August 2021 to December 2021.

41.     Defendant paid Plaintiff Saunders for her services in the form of an hourly wage, for all credited hours worked, most recently at $18.23 per hour.

42.     Plaintiff Saunders signed a consent to join this collective action lawsuit. ECF No. 19-1.

43.     Defendant is a New Jersey Corporation that is registered to do business in New Jersey and maintains a registered agent office in Union New Jersey, with Entity ID #0100798468.

## **GENERAL ALLEGATIONS**

44.      Defendant employed Plaintiffs as a remote Hourly Employees from Plaintiffs' home offices in South Carolina and Massachusetts within the last three (3) years.

45.     Defendant's Hourly Employees are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) remote computer based work including, but not limited to, taking in-bound calls from and making out-bound calls to individuals who need assistance related to technical issues with their computers, or with customer service related to the products and services offered by Defendant's corporate customers; (c) ensuring that calls and work are documented and accounted for in Defendant's systems; and (d) logging out of the computer software programs and applications.

46.     IT TECHs are primarily responsible for assisting the employees of Defendant's corporate clients with computer related technical issues.

47.     CSRs are primarily responsible for fielding inbound calls from the customers of Defendant's corporate clients.

48.     For example, Plaintiff Sheppard was employed by Defendant as an IT TECH and required to assist Florida Blue's employees with any technical issues they encountered with their work computers.

49.     Regardless of which client the IT TECH works for, the general nature of the

responsibilities, qualifications, and method of compensation are the same or similar.

50.     Similarly, Plaintiff Saunders was employed by Defendant as a CSR and required to provide over-the-phone customer service to Mercer's customers.

51.     Regardless of which client the CSR works for, the general nature of the responsibilities (providing customer service), qualifications, and method of compensation are the same or similar.

52.     Whether an IT TECH, CSR, or another hourly position, Defendant's Hourly Employees are all hourly, non-exempt positions with rigid full-time schedules that require them to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) or more hours in a workweek.

53.     The full-time schedules result in Hourly Employees routinely working overtime.

54.     Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including unpaid overtime, as part of their roles as Hourly Employees.

55.     Defendant maintained an unlawful timekeeping practice of routinely approving Hourly Employees' timecards which it knew, or should have known, were inaccurate and deficient.

56.     For example, Defendant's unlawful timekeeping policies and the unpaid time at issue in this case are evidenced by Plaintiff Sheppard's paystubs, which routinely reflect she was paid for exactly forty hours of work in most workweeks.

57.     Defendant scheduled its Hourly Employees to work forty (40) hours per week, required them to be call-ready at the start of their scheduled shifts, but only paid them for scheduled hours rather than the hours worked.

58.     Defendant knew or should have known that the off-the-clock work was regularly

occurring by the Hourly Employees timecards, which routinely reported scheduled hours rather than all hours worked.

59.     At all relevant times, Defendant controlled its Hourly Employees' work schedules, duties, protocols, applications, assignments, and employment conditions.

60.     Defendant was also responsible for training and continuing its Hourly Employees' education in their roles. In fact, Defendant's website boasts its uniform training procedures.

61.     Defendant's remote Hourly Employees all perform similar remote work tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

62.     These programs, applications and systems are integral and an important part of the Hourly Employees' remote work, and they cannot perform their jobs without them.

63.     Defendant's Hourly Employees all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies. Plaintiffs have attended training and meetings with numerous other Hourly Employees on these matters.

64.     Defendant expressly instructs and trains Hourly Employees to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can begin taking and making phone calls.

65.     Hourly Employees, including Plaintiffs, are instructed to generally report scheduled hours through the Beeline system, rather than hours worked.

66.     Defendant furthermore enforces its policy of requiring all computer networks, programs and applications to be open and ready at the commencement of an Hourly Employees' shift, and critically, before the Hourly Employee records his or her clock-in time, through their performance metrics and timecard approval process.

67.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

68.     Because Hourly Employees are prohibited or pressured from including all hours worked on their timecards, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

69.     Thus, the hours reflected on the Hourly Employees' pay stubs are inaccurate and contrived by Defendant.

70.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their IT TECHs for no less than twenty-two (22) minutes per day of work performed during pre-shift time and during their lunch periods.

71.     Similarly, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than twelve (12) minutes per day of work performed during pre-shift time and during their lunch periods.

72.     This time could easily be recorded, accounted for and paid, but for Defendant's choice not to credit such time as time worked.

### A.      Pre-Shift Off-the-Clock Work

73.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's remote Hourly Employees perform pre-shift work tasks for which they are uncompensated.

74.     Pursuant to Defendant's policies, training and direction, Defendant's remote Hourly Employees are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

75.     For IT TECHS the pre-shift startup and login process takes substantial time on a

daily basis with said time averaging twenty (20) minutes to thirty (30) minutes per day, and the tasks can take longer if IT TECHs experience technical problems with the computer, software, and/or applications.

76.     Similarly, the pre-shift startup and login process for CSRs also takes substantial time on a daily basis with said time averaging ten (10) to twelve (12) minutes per day, and the tasks can take longer if the CSRs experience technical problems with the computer, software, and/or applications.

77.     Prior to the commencement of each scheduled shift, Plaintiff Sheppard, as well as the other IT TECHs, were required to complete the following tasks or tasks substantially similar to the tasks below:

      a.  Turn on their computer;
      b.  Open, load, connect, and log-into Defendant's virtual private network (VPN) by completing a multi-factor authentication process;
      c.  Log into Windows;
      d.  Log into password keeper;
      e.  Log into Stepsons
      f.  Log into the Stats Page;
      g.  Open Outlook (to read emails from overnight with work instructions and to check stats from previous shift);
      h.  Log into Bitlocker;
      i.  Open the Active Directory;
      j.  Log into Psynch;
      k.  Open Microsoft Teams (to communicate with team members);
      l.  Open Cisco Finesse and Jabber (the phone systems);
      m.  Open Microsoft One Note (for call notes);
      n.  Log-into Blue Data; and
      o.  Log-into Tier 1 Gwnsm desktop, rsa, citrix director, vnware (for virtual machines), and remote-control viewer.

78.     The aforementioned tasks are an integral and essential aspect of an IT TECH's job duties and responsibilities, as IT TECHs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls.

12

79.     Yet, Defendant fails to compensate IT TECHs for the computer boot up tasks.

80.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay IT TECHs for no less than twenty (20) minutes per day of work performed in connection with the above pre-shift activities and all IT TECHs have been damaged by virtue of Defendant's failure to pay for these compensable work tasks.

81.     Other remote Hourly Employees, such as Defendant's CSRs, must likewise engage in a lengthy and uncompensated computer bootup process that is integral and indispensable to their job duties.

## B.     Meal-Period Off-the-Clock Work

82.     Defendant provides their Hourly Employees with a one (1) hour unpaid lunch break per shift.

83.     In reality, Defendant routinely requires Hourly Employees to perform work during their unpaid lunch breaks.

84.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> **Bona fide meal periods**. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be _completely relieved_ from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

85.     Defendant does not provide Hourly Employees with a bona fide meal period because its policies and procedures require Hourly Employees to return from their lunch early to

13

perform at least part of the boot up process outlined above.

86.     IT TECHs spend approximately two (2) to five (5) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when IT TECHs are required to do a complete reboot.

87.     Similarly, CSRs spend approximately two (2) to three (3) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

88.     Defendant's management is aware that Plaintiffs and other Hourly Employees perform these tasks off the clock, and could have paid Hourly Employees for this time, but did not.

### C.     Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

89.     An example of a specific workweek where Defendant failed to pay Plaintiff Sheppard all overtime due for hours worked as an IT TECH in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Week of 04/08/23 to 04/14/23**

- Plaintiff Sheppard was paid at a rate of $20.50 per hour for the 40 regular hours Defendant credited her as having worked.

- With unpaid pre-shift and meal-period time of no less than twenty two (22) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional one hundred ten (110) minutes at her overtime rate of $30.75 per hour during the overtime workweek.

**Exhibit 1**, Time Sheet 4-8-23.

90.     To be clear, during the exemplary pay period in paragraph 89, within two years of filing her consent to join this action, Defendant employed Plaintiff in the role of IT TECH.

91.     An example of a specific pay period where Defendant failed to pay Plaintiff Saunders all overtime due for hours worked as an CSR in excess of forty (40) hours, as mandated

by the FLSA, includes the following:

**Pay Period of 09/12/2021 to 09/25/2021**

- Plaintiff Saunders was paid at a rate of $18.00 per hour for the 40 regular hours Defendant credited her as having worked in both work weeks. Plaintiff Saunders paystub states that Defendant credited her for working a total of exactly 80 hours during the pay period.

- With unpaid pre-shift and meal-period of no less than twelve (12) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional sixty (60) minutes at her overtime rate of $27.00 per hour during the overtime workweek.

**Exhibit 2**, Time Sheet.

92.     Defendant used the above-described common plan and policy of regularly approving timecards based on scheduled hours rather than hours worked to avoid properly compensating other similarly situated Hourly Employees who routinely worked over forty hours or more per week.

93.     The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

## D.     Defendant Benefitted From the Uncompensated Off-the-Clock Work

94.     At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift and meal-period activities performed by Hourly Employees.

95.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their Hourly Employees.

96.     At all relevant times, Defendant was able to track the amount of time Hourly Employees spent in connection with the pre-shift, meal-period and post-shift activities.

97.     Defendant failed to do so and failed to compensate Hourly Employees for the off-the-clock work they performed setting up their computers.

98.     At all relevant times, remote Hourly Employees were non-exempt hourly employees, subject to the requirements of the FLSA.

99.     At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the Hourly Employees in order to pressure them into performing the pre-shift and meal-period off-the-clock work.

100.    Defendant expressly trained and instructed Hourly Employees to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to perform their work duties (i.e., were "phone ready") the moment their shifts began.

101.    At all relevant times, Defendant's policies and practices deprived Hourly Employees of wages owed for the pre-shift and meal-period activities they performed.

102.    Because Defendant's Hourly Employees typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

103.    Defendant knew or should have known that the time spent by Hourly Employees in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

104.    In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

105.    Despite knowing Hourly Employees performed work before and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered or permitted it to happen.

106.    Unpaid overtime wages related to the off-the-clock work described herein are owed to Hourly Employees at the FLSA mandated overtime premium of one and one-half their regular hourly rate because Hourly Employees regularly worked in excess of forty (40) hours in a

workweek.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

107.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former remote hourly-paid employees ("Hourly Employees") who worked for Defendant at any time during the three years preceding the filing of the complaint through judgment, required a computer to perform their job duties, and used the Beeline timekeeping system*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

108.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Hourly Employees.

109.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid all premium overtime compensation when they worked beyond forty (40) hours in a workweek, as explained herein.

110.     Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

111.     As part of their regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

       a.      Willfully failing to pay their hourly employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

       b.      Prohibiting or pressuring Plaintiffs and the FLSA Collective to underreport hours worked;

17

c.      Approving timecards Defendant knew or should have reasonably known underreported Plaintiffs and the FLSA Collective's hours worked; and

d.      Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

112.    Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

113.    Indeed, in light of the DOL's guidance (cited above) and the multitude of courts that have held computer boot up time is compensable, no legitimate argument can be made that Defendant's violation of the FLSA was not willful, or at a minimum, reckless.

114.    The willfulness of Defendant's violations is underscored by the fact Defendant routinely approved timecards that reported scheduled hours, rather than hours worked.

115.    Defendant's unlawful conduct has been widespread, repeated and consistent.

116.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).

117.    The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

118.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

119.    The key issue – the Defendant's failure to pay hourly employees for pre-shift and mid-shift time loading and logging into essential computer systems – does not vary substantially

18

among the proposed FLSA Collective members.

120.     Many similarly situated current and former Hourly Employees have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

121.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

122.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

123.     Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

124.     The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 SOUTH CAROLINA CLASS ACTION ALLEGATIONS

125.     Plaintiff Sheppard brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former remote hourly-paid employees ("Hourly Employees") who worked for Defendant in the State of South Carolina at any time during the three years preceding the filing of the complaint through judgment, required a computer to perform their job duties, and used the Beeline timekeeping system.*

(hereinafter referred to as the "Rule 23 South Carolina Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

126.     The members of the Rule 23 South Carolina Class are so numerous that joinder of all Rule 23 South Carolina Class members in this case would be impractical.

127.     Plaintiff reasonably estimates that there are hundreds of Rule 23 South Carolina

Class members. Rule 23 South Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

128.    There is a well-defined community of interest among Rule 23 South Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 South Carolina Class.

129.    These common legal and factual questions include, but are not limited to, the following:

a.    Whether the pre-and mid-shift time Rule 23 South Carolina Class members spend on start-up/log-in activities off the clock each shift is compensable time;

b.    Whether Defendant failed to pay all "wages" owed to the Rule 23 South Carolina Class, as contemplated by the SCPWA;

c.    Whether Defendant unlawfully withheld or diverted wages from the Rule 23 South Carolina Class in violation of the SCPWA;

d.    Whether Defendant failed to properly notify each member of the Rule 23 South Carolina Class in writing at the time of hiring the normal hours and wages agreed upon, the time and place of payment, and the deductions made from their wages;

e.    Whether Defendant knowingly or willfully approved timecards it knew or should have known did not include all the Rule 23 South Carolina Class Members' hours;

f.    Whether Defendant properly furnished each Rule 23 South Carolina Class Member with an itemized statement showing the gross pay and deductions;

g.    Whether Defendant failed to timely pay all wages owed to the Rule 23 South Carolina Class, as required by SCPWA; and

h.    Whether the Rule 23 South Carolina Class members are owed wages for time spent performing pre- and mid -shift activities discussed herein, and if so, the appropriate amount thereof.

130.    Plaintiff's claims are typical of those of the Rule 23 South Carolina Class in that they and all other Rule 23 South Carolina Class members suffered damages as a direct and

proximate result of the Defendant's common and systemic payroll policies and practices.

131.    Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 South Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 South Carolina Class members.

132.    Plaintiff will fully and adequately protect the interests of the Rule 23 South Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of South Carolina wage and hour class actions.

133.    Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 South Carolina Class.

134.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 South Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

135.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

136.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and their corporate/government clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

137.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

138.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 MASSACHUSETTS CLASS ACTION ALLEGATIONS

139.    Plaintiff Sheppard brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former remote hourly-paid employees ("Hourly Employees") who worked for Defendant in the State of Massachusetts at any time during the three years preceding the filing of the complaint through judgment, required a computer to perform their job duties, and used the Beeline timekeeping system*

(hereinafter referred to as the "Rule 23 Massachusetts Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

140.    The members of the Rule 23 Massachusetts Class are so numerous that joinder of all Rule 23 Massachusetts Class members in this case would be impractical.

141.    Plaintiff reasonably estimates that there are hundreds of Rule 23 Massachusetts Class members. Rule 23 Massachusetts Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

142.    There is a well-defined community of interest among Rule 23 Massachusetts Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Massachusetts Class.

143.     These common legal and factual questions include, but are not limited to, the following:

    a.    Whether the pre-and mid-shift time Rule 23 Massachusetts Class members spend on start-up/log-in activities off the clock each shift is compensable

time;

b.      Whether Defendant failed to pay all final wages owed to the Rule 23 Massachusetts Class at the time required by the Massachusetts Wage Act ("MWA");

c.      Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Massachusetts Class in violation of the MWA;

d.      Whether Defendant knowingly or willfully approved timecards it knew or should have known did not include all the Rule 23 Massachusetts Class Members' hours; and

e.      Whether the Rule 23 Massachusetts Class members are owed wages for time spent performing pre- and mid-shift activities discussed herein, and if so, the appropriate amount thereof.

144.    Plaintiff Saunder's claims are typical of those of the Rule 23 Massachusetts Class in that they and all other Rule 23 Massachusetts Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

145.    Plaintiff Saunder's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Massachusetts Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Massachusetts Class members.

146.    Plaintiff Saunders will fully and adequately protect the interests of the Rule 23 Massachusetts Class and she has retained counsel who are qualified and experienced in the prosecution of Massachusetts wage and hour class actions.

147.    Neither Plaintiff Saunders nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Massachusetts Class.

148.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Massachusetts Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their

employer.

149.   Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

150.   This case will be manageable as a Rule 23 Class action. Plaintiff Saunders and her counsel know of no unusual difficulties in this case and Defendant and their corporate/government clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

151.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

152.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Massachusetts Class and declaratory relief is appropriate in this case with respect to the Rule 23 Massachusetts Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

153.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

154.   At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

155.   At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

156.   Plaintiffs and the FLSA Collective, by virtue of their job duties and activities

actually performed, are all non-exempt employees.

157.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

158.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

159.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform off-the-clock work every shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

160.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

161.    Defendant's violations of the FLSA were knowing and willful.

162.    Defendant knew or could have determined how long it takes its Hourly Employees to perform their off-the-clock work.

163.    Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

164.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 South Carolina Class Action)
### South Carolina Payment of Wages Act, SC Code Ann. §§ 41-10-10, *et seq*.:

165.     Plaintiff Sheppard re-alleges and incorporates all previous paragraphs herein.

166.     The South Carolina Payment of Wages Act (SCPWA) governs the activities of and imposes obligations on Defendant as the South Carolina Rule 23 Class Members' "employer." *See*, SC Code Ann. § 41-10-10.

167.     The SCPWA provides that "[e]very employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from wages." SC Code Ann. § 41-10-30 (A).

168.     Furthermore, "[a]ny changes in these terms must be made in writing at least seven calendar days before they become effective." *Id*.

169.     Defendant failed to properly and lawfully notify Plaintiff Sheppard and the Rule 23 South Carolina Class Members of changes to their hours and wages agreed upon, and the time and place of payment, and the deductions from their wages.

170.     Additionally, Defendant failed to furnish Plaintiff Sheppard and the Rule 23 South Carolina Class Members with an "itemized statement showing his gross pay and the deductions made from his wages for each pay period." SC Code Ann. § 41-10-30 (C).

171.     Defendant failed to pay Plaintiff Sheppard and the Rule 23 South Carolina Class Members "all wages due" as required by SC Code Ann. § 41-10-40.

172.     Defendant unlawfully withheld or diverted the wages of Plaintiff Sheppard and the Rule 23 South Carolina Class Members, in violation of SC Code Ann. § 41-10-40 (C).

173.     Defendant failed to "pay all wages due at the time and place designated," in violation of SC Code Ann. § 41-10-40 (D).

174.    The SCPWA provides that "[i]n the case of any failure to pay wages due to an employee … the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow." SC Code Ann. § 41-10-80 (C).

175.    The SCPWA provides for a three-year (3) statute of limitations on all such civil claims. *Id*.

176.    Pursuant to SC Code Ann. § 41-10-100, "[n]o provision [of the SCPWA] may be contravened or set aside by private agreement."

**COUNT III**
**(Rule 23 Massachusetts Class Action)**
**Massachusetts Wage Act M.G.L. c. 149 § 148; M.G.L. c.151 §1A**

177.    Plaintiff Saunders incorporates by reference all previous paragraphs herein.

178.    Defendant was an "employer," as the term is used in the Massachusetts Wage Act ("MWA"), of Plaintiff Saunders and the Rule 23 Massachusetts Class.

179.    Plaintiff Saunders and the members of the Rule 23 Massachusetts Class were engaged in an "occupation" as that term is used in the MWA.

180.    Defendant failed to pay Plaintiff Saunders and the members of the Rule 23 Massachusetts Class for all hours worked, including for time spent on the booting-up, connecting, and loading their computer systems and networks at their base hourly rate (for hours worked under forty in a workweek) and at their overtime rate (for hours worked over forty in a workweek).

181.    The MWA provides that each employee must be paid all "the wages earned by him" within the statutory time periods. M.G.L. c. 149 § 148.

182.    Defendant failed to pay Plaintiff Saunders and the members of the Rule 23 Massachusetts Class at their overtime rate for all hours worked over forty in a workweek, including

for time spent on the booting-up, connecting, and loading their computer systems.

183.    The MWA requires overtime premiums "for a work week longer than forty hours … at a rate not less than one and one half times the regular rate at which he is employed." M.G.L. c.151 §1A.

184.    Due to Defendant's violation of the MWA, Plaintiff Saunders and the Rule 23 Massachusetts Class have incurred harm and loss and are entitled to recover from Defendant unpaid wages mandatorily trebled, attorneys' fees, costs of the action, and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, and on behalf of the Rule 23 South Carolina Class, and on behalf of the Rule 23 Massachusetts Class, request judgment as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   Certifying this action as a class action (for the Rule 23 South Carolina Class and the Rule 23 Massachusetts Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims under the SCPWA (Count II) and MWA (Count III);

c.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA collective action Class members and the Rule 23 South Carolina Class members, and the Massachusetts Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d.   Designating Plaintiffs as the representatives of the FLSA collective action and the Rule 23 South Carolina Class (Sheppard) or Rule 23 Massachusetts Class (Saunders), and undersigned counsel as Class counsel for the same;

e.   Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f.   Declaring Defendant's violation of the FLSA was willful;

28

g.   Declaring Defendant violated the SCPWA as cited herein;

h.   Declaring Defendant's violation of the SCPWA was willful;

i.   Declaring Defendant violated the MWA as cited herein;

j.   Declaring Defendant's violation of the MWA was willful;

k.   Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 South Carolina Class and Rule 23 Massachusetts Class the full amount of damages and liquidated damages available by law;

l.   Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

m.   Awarding treble damages as provided by the SCWPA;

n.   Awarding treble damages as provided by the MWA;

o.   Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

p.   Awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: June 25, 2024                    Respectfully Submitted,

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*Admitted PHV*)
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 234-5583
cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*Admitted PHV*)
126 S. Main St.
Ann Arbor, MI 48104-1903

1mm

(734) 662-4426
orod@hooperhathaway.com

**BROWN, LLC**

*/s/ Edmund Celiesius*
Nicholas Conlon
Edmund C. Celiesius
Brown, LLC
111 Town Square Place #400
Jersey City, New Jersey 07310
(201) 630-0000
nicholasconlon@jtblawgroup.com
Ed.celiesius@jtblawgroup.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Edmund Celiesius*
Edmund Celiesius