UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CYNTHIA SHEPPARD, and MICHELE SAUNDERS, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MINDLANCE, INC.,<br><br>Defendant. | Civil Action No. 24-1172<br><br>Hon. Michael E. Farbiarz, U.S.D.J.<br><br>Hon. Cathy L. Waldor, U.S.M.J.<br><br><br>**OPINION** |

**CATHY L. WALDOR, U.S.M.J.**

  Before the Court is Plaintiffs' Motion for Conditional Certification of a Collective Action under the Fair Labor Standards Act. (ECF No. 44). The District Judge referred Plaintiffs' application to the undersigned. In accordance with Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court addresses Plaintiffs' Motion without oral argument. Upon careful consideration of the record for this matter, and for the reasons discussed herein, Plaintiffs' Motion is **DENIED WITHOUT PREJUDICE.**

  **I.**  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

  Plaintiffs Cynthia Sheppard ("Sheppard") and Michele Saunders's ("Saunders") (collectively, "Plaintiffs") commenced this action on February 28, 2024. (Complaint, ECF No. 1). Plaintiffs brought this matter as a collective and class action pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure due to Defendant Mindlance, Inc.'s ("Defendant"), alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the South

Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, *et seq.*, and the Massachusetts Wage Act, M.G.L. c. 149 §148.  (Amended Complaint ¶ 1, ECF No. 20).

Plaintiffs were hourly, non-exempt, remote employees, with Sheppard working as an IT Tech for Defendant's client, Blue Cross Blue Shield of Florida, and Saunders working as a Customer Service Representative for Defendant's client, Mercer, Marsh McCellan.  (*Id*. at ¶¶ 4–9).  Plaintiffs recorded their own hours on a timekeeping system called "Beeline," and allege that Defendant willfully violated the FLSA by instructing Plaintiffs to record their scheduled eight-hour shifts, rather than the time they actually worked.  (*Id*. at ¶¶ 44–66).  Plaintiffs aver that Defendant maintained a policy requiring all remote workers to have their computers and service applications ready at the start of their shift (i.e., a "boot up" process), causing Plaintiffs to work more than forty hours per week by adding approximately ten to thirty minutes of work each day prior to the start of their scheduled shifts.  (*Id.* at ¶¶ 66–81).  Plaintiffs also contend that they returned from their meal breaks approximately two to five minutes early in order to complete the "boot up" process.  (*Id*. at ¶¶85–88).  And because overtime must be pre-approved, Plaintiffs assert that they were not being paid for this off the clock work even though Defendant was aware of the time employees take to prepare for their shifts.  (*Id*. at ¶¶ 66–88).

Plaintiffs move to conditionally certify a collective action under Section 216(b) of the FLSA for unpaid overtime wages on behalf of all current and former remote hourly-paid employees who worked for Defendant at any time from August 21, 2021, to the present, required a computer to perform their job duties, and used the Beeline timekeeping system.  (Plfs. Brief at 1, ECF No. 44-1).

## II. LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Section 207 of the FLSA requires employers to pay overtime, at a rate not less than one and one-half times the employee's rate, to employees who work more than forty hours per week. 29 U.S.C. § 207. The FLSA creates a private right of action for a plaintiff to sue on behalf or herself or, collectively, on behalf of other "similarly situated" plaintiffs. 29 U.S.C. § 216(b). To join the collective action, the FLSA mandates potential party members to opt-in by filing written consent with the court. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242–43 (3d Cir. 2013) (citing 29 U.S.C. § 216(b)).

This Circuit adopted a two-step process to certify a collective action under the FLSA. *In re Citizens Bank, N.A.*, 15 F.4th 607, 611 (3d Cir. 2021); *Camesi*, 729 F.3d at 243. "The first step, so-called conditional certification, requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). Courts examine "both the pleadings and affidavits in support of or in opposition to the proposed collective action" when making this determination, *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 569 (D.N.J. 2014), but will not "hesitate[ ] to deny conditional certification when evidence is lacking," *Dreyer v. Altchem Envtl. Servs., Inc.*, No. 06-2393, 2007 WL 7186177, at *3 (D.N.J. Sept. 25, 2007). Therefore, the "'factual nexus' standard is met when plaintiffs provide information about who is in the potential collective and provide a reason for

3

inferring that the potential collective members are similarly situated." *Fuentes v. Super Bread II, Corp.*, No. 18-6736, 2020 WL 7237942, at *7 (D.N.J. Dec. 9, 2020) (citing *Zanes v. Flagship Resort Dev., LLC*, No. 09-3736, 2010 WL 4687814, at *4 (D.N.J. Nov. 9, 2010)).

Once the movant satisfies this burden, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi*, 729 F.3d at 243. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Symczyk*, 569 U.S. at 75 (internal citation omitted). A court's decision to grant conditional certification is discretionary. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013).

The second step, after the benefit of discovery, requires a court to "make[] a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Id*. at 193.[1] The plaintiffs must demonstrate this by a preponderance of the evidence. *Zavala*, 691 F.3d at 537.

### III.  DISCUSSION

At this stage, the only issue before the Court is whether Plaintiffs have shown the existence of other remote employees who were denied overtime compensation for the time it took to complete "booting up" their computers in preparation for their shifts. The inquiry demands a modicum of factual evidence "beyond mere speculation." *Halle*, 842 F.3d at 224.

---

[1] In dicta, the Third Circuit cited a Second Circuit decision with approval to clarify the distinction between the two stages. *See Zavala*, 691 F.3d at 536 n.4 ("The Second Circuit has described this initial step as 'determin[ing] *whether* "similarly situated" plaintiffs do in fact exist," while at the second stage, the District Court determines "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" (quoting *Meyers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (alteration and emphasis in original)).

Plaintiffs argue that conditional certification is appropriate because Defendant maintained an unlawful policy requiring employees to record only their scheduled work hours and prohibited remote employees from recording the time it would take for them to "boot up" their computers, effectively denying them overtime compensation. (Plfs. Brief at 11–12, 15–16, ECF No. 44-1).[2] To support this claim, Plaintiffs attest that Defendant and Plaintiffs' on-site supervisors at Blue Cross Blue Shield of Florida and Mercer, Marsh McCellan required Plaintiffs to be "call ready" at the start of their scheduled shifts. (Sheppard Dec. ¶¶ 7–9, ECF No. 44-3; Saunders Dec. ¶¶ 7–9, ECF No. 44-4). Plaintiffs contend that, based on these instructions, they performed a series of tasks prior to logging onto their computers and spent approximately ten to thirty minutes per day doing so, but were not compensated for this work. (Sheppard Dec. ¶¶ 9–16, ECF No. 44-3; Saunders Dec. ¶¶ 9–16, ECF No. 44-4). Plaintiffs aver that every IT Tech or Customer Service Representative that they are aware of completed the same unpaid tasks prior to their scheduled shifts. (Sheppard Dec. ¶¶ 17–23, ECF No. 44-3; Saunders Dec. ¶¶ 17–23, ECF No. 44-4). Plaintiffs further indicate that they witnessed other employees in their respective departments be affected by the policies at issue, (Sheppard Dec. ¶¶ 29, ECF No. 44-3; Saunders Dec. ¶¶ 29, ECF No. 44-4), and submit hundreds of timecards evidencing the hours other employees recorded to demonstrate that these employees are similarly situated, (Plfs. Brief at 11–14, ECF No. 44-1; Exhibit 5, ECF No. 44-6; Exhibit 6, ECF No. 44-7).

Defendant opposes conditional certification. Defendant asserts Plaintiffs have not demonstrated, beyond conclusory allegations, that there is a common policy applicable to all

---

[2] Plaintiffs appear to assert two slightly different policies and practices. The first, that Defendant declines to pay overtime for the ten to thirty minutes per day it takes the employees to "boot up" their computers because they must record only their scheduled hours. (Sheppard Declaration at ¶ 21, ECF No. 44-3; Saunders Declaration at ¶21; ECF No. 44-4). The second, that Defendant maintains a policy of requiring employees to estimate their hours worked in whole hours or increments of an hour rather than recording their hours worked by the precise minute. (Plfs. Brief at 12–14, ECF No. 44-1).

5

remote workers requiring them to work off the clock to "boot up" their computers, and Plaintiffs have not submitted evidence of such a policy beyond the Employee Handbook. (Df. Opp. Brief at 13–15, 18–19, ECF No. 52). Defendant further contends that based on the nature of Plaintiffs' remote positions, Sheppard and Saunders's respective declarations demonstrate differences among remote employees for the specific end client they are assigned, and such fact-specific variations make a collective action untenable. (*Id*. at 15–17, 20–23). Finally, Defendant asserts that Plaintiffs fail to demonstrate that other "opt-in" members exist. (*Id*. at 23).

In order to meaningfully consider whether Plaintiffs are similarly situated to the potential collective members, Plaintiffs must, at a minimum, provide this Court with information about who is in the potential collective. *Fuentes*, 2020 WL 7237942, at *7. Here, however, Plaintiffs' declarations are vague. The only information Plaintiffs provide is that they "witnessed" every remote worker "they are aware of" within their respective departments conduct the same uncompensated pre-shift procedures. (Sheppard Dec. ¶¶ 17–29, ECF No. 44-3; Saunders Dec. ¶¶ 17–29, ECF No. 44-4). Plaintiffs do not assert basic information about the class that should be readily known to them at this stage, such as: (1) the names of other affected employees, (2) the years those employees worked in their departments, (3) whether those employees were denied overtime for performing pre-shift tasks, and (4) how Plaintiffs came to understand that these remote workers were not being paid for off the clock time. *See White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 388 (D.N.J. 2010) (denying conditional certification on the basis of the lack of relevant facts); *Doe 1 v. Banc, Jack & Joe, LLC*, No. 17-03843, 2018 WL 7254693, at *3 (D.N.J. 2018) (same). Such "basic facts are readily ascertainable at the pleading stage even before discovery, and their absence is noticeable." *Siu Ching Ha v. 4175 LLC*, No. 15-5530, 2018 WL 1509090, at *4 (D.N.J. March 27. 2018).

Furthermore, to corroborate their assertion that members of the proposed collective exist, Plaintiffs submit anonymized time sheets demonstrating the hours for which other employees were compensated. (Exhibit 5, ECF No. 44-6, Exhibit 6, ECF No. 44-7). Viewed in isolation, the Court does not find that these documents shed much light on whether these employees are subject to a company-wide scheme to deprive remote employees from receiving overtime compensation for work conducted in preparation for their shifts.[3] And when reviewed in tandem with Plaintiffs' terse allegations about other affected workers, the Court is not convinced that Plaintiffs provided the Court with a modest evidentiary foundation to infer a connection between Plaintiffs' circumstances and that of the proposed collective. At its essence, Plaintiffs want this Court to assume that a class of similarly situated individuals exists without providing the information required to make such an inference.[4] This, the Court cannot do. *See Rogers v. Ocean Cable Grp. Inc.*, No. 10-4198, 2011 WL 6887154, at *4 (D.N.J. Dec. 29, 2011) ("Under the standard for conditional class certification, there must be a *factual* nexus, not an assumption of facts." (emphasis in original)).

Plaintiffs posit that Courts of this Circuit "routinely grant conditional certification to hourly employees on claims of unpaid computer bootup time." (Plfs. Brief at 17, ECF No. 44-1). This

---

[3] In substance, these documents provide very little information. What they do show, however, is instances of anonymous employees receiving compensation for .03, .23, .47, and .56 hours, which undermines Plaintiffs' contention that Defendant requires employees to record time for only the precise hours of their scheduled shifts or, under the alternative theory, that employees must estimate their time worked by whole hours or quarterly increments of an hour. (*See e.g.*, Exhibit 5 at 299–300 (ECF pagination), ECF No. 44-6). Additionally, these records show that Sheppard and other anonymous employees received overtime pay for some pay periods. (*See id*. at 273, 277 (ECF pagination) & Exhibit 6 at 526, 529–530, 535, 538, 539, 542, 544, 548–552, 559, 560–61 (ECF pagination), ECF No. 44-7).

[4] Plaintiffs also point to Defendant's Employee Handbook for implementing such policies resulting in violations of the FLSA, insofar as the Employee Handbook mandates employees to be ready to work at the start of their shifts and states that overtime must be approved in advance. (Sheppard Dec. ¶¶ 5, 14, ECF No. 44-3; Saunders Dec. ¶¶ 5, 14, ECF No. 44-4). But the Employee Handbook—in no uncertain terms—undercuts Plaintiffs' position by specifically proscribing any off the clock work and encourages employees to report the supervisors or managers who require uncompensated work. (Plf. Exhibit 7 at 557 (ECF Pagination), ECF No. 44-9). The Court does not give the Employee Handbook much weight to determine whether Defendants maintained a policy of refusing to pay remote workers for pre-shift preparations that resulted in those employees working in excess of forty hours per week.

may be true. However, each case Plaintiffs rely upon is distinguishable from the present application because the named plaintiffs in those cases submitted evidence—beyond the named plaintiffs' declarations—to corroborate the existence of other workers subject to their employers' practice of failing to compensate remote workers for pre-shift preparation tasks. *See Bishop v. AT&T Corp.*, 256 F.R.D. 503, 505 (W.D. Pa. 2009) (submitting forty-five declarations from potential opt-in members who were required to perform unpaid, pre-shift activities); *Fulton v. Cap. Mgmt. Servs., L.P.*, No. 22-00823, 2025 WL 353904, at *3-4 (W.D. Pa. Jan. 31, 2025) (submitting emails from employees regarding uncompensated pre- and post-shift activities, as well as responsive emails from supervisors requiring employees to perform such work unpaid); *Clark v. Intelenet Am., LLC*, No. 18-14052, 2020 WL 831127, at *4 (D.N.J. Feb. 19, 2020) (submitting declarations from six other remote employees and their pay stubs, as well as emails from supervisors regarding uncompensated pre-shift responsibilities); *Adams v. QVC, Inc.*, No. 21-0646, 2021 WL 5906242, at *4 (E.D. Pa. Dec. 14, 2021) (submitting fifteen declarations from individuals indicating they were not compensated for overtime spent logging on and off their computers); *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 678–79 (D.N.J. 2014) (submitting multiple declarations from employees who were instructed to conduct pre-shift work without pay); *Steinberg v. TD Bank, N.A.*, No. 10-5600, 2012 WL 2500331, at *2–*4 (D.N.J. June 27, 2012) (submitting deposition transcripts to support assertions of employees being mandated to work off the clock). Unlike those cases, Plaintiffs' submissions are too sparse to infer the existence of any opt-in plaintiffs sufficient to grant conditional certification.

The Court thus concludes that Plaintiffs have not met the fairly lenient conditional certification standard at this time. As the Third Circuit noted, "[a] denial at the conditional certification stage is not necessarily a final determination of whether the matter may proceed as a

collective action. Some courts permit the issue to be revisited after discovery or efforts by the named plaintiff to re-define the contours of the proposed collective action." *Halle*, 842 F.3d at 224–25.  The Court does not address Plaintiffs' proposed notice forms.

IV. **CONCLUSION**

Based on the foregoing, Plaintiffs' Motion for Conditional Certification of a Collective Action under the Fair Labor Standards Act (ECF No. 44) is **DENIED WITHOUT PREJUDICE**.


                                                            **s/ Cathy L. Waldor**
                                                            **Hon. Cathy L. Waldor**
                                                           **United States Magistrate Judge**


Cc:    Hon. Michael E. Farbiarz, U.S.D.J.